### AFFIDAVIT OF SPECIAL AGENT MICHAEL D. BALESTRA IN SUPPORT OF A CRIMINAL COMPLAINT

I, Michael D. Balestra, being duly sworn, depose and state:

1. I am a Special Agent of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), currently assigned to the Office of the Special Agent in Charge in Boston, Massachusetts, and have been employed in that capacity since February 2007. Since that time, I have been assigned to the Counter-Proliferation Investigations Group and more recently the Airport/Seaport Group. From 2005 through 2007, I was employed as an Industry Operations Investigator ("IOI") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As an IOI, I performed inspections of firearms and explosives dealers across New England in order to ensure compliance with ATF regulations. Prior to my employment with ATF, from 2001 through 2003, I was employed as a Customs Inspector with the United States Customs Service. Among other duties, as a Customs Inspector, I conducted (1) searches of vehicles, cargo, and travelers for possible contraband and weapons; (2) arrests of passengers for outstanding warrants; and (3) interviews of travelers seeking entry into the United States.

2. This affidavit is based upon information supplied to me by other law enforcement officers, my personal involvement in

this investigation, and my training and experience.  In submitting this affidavit, I have not included each and every fact known to me about the investigation, but instead have included only those facts that I believe are sufficient to establish the requisite probable cause.

    3.   On May 10, 2015, IRELINE APONTE MELENDE ("APONTE MELENDE"), DOB xx/xx/1984, arrived at Logan International Airport Boston, MA, on JetBlue flight #924 from Santiago, Dominican Republic.  APONTE MELENDE, a national of the Dominican Republic (DO PP#SC4902894), was admitted to the United States by the primary Customs and Border Protection Officer ("CBPO") as a visa category B2 (visitor for pleasure), and was referred for a secondary baggage examination.

    4.   APONTE MELENDE was escorted to Customs and Border Protection ("CBP") baggage secondary and was selected for examination by CBPO M. Carbone, who obtained a binding declaration.  APONTE MELENDE, a leg amputee, was sitting in a motorized wheelchair that was inoperable; she stated that the batteries had died.

    5.   Spanish speaking officer CBPO Z. Evans was onsite and asked APONTE MELENDE if she had the ability to get out of the wheelchair and she stated "yes."  APONTE MELENDE moved out of the wheelchair and sat in one of the seats in baggage secondary.  APONTE MELENDE's wheelchair was x-rayed and then the batteries

were removed and x-rayed separately.  CBP Chief McPherson was onsite and observed an abnormality in both batteries.

6. Each battery was opened revealing two (2) bricks contained in each battery (four (4) bricks total).  The bricks contained a white powdery substance.  One brick was field tested using NarcoPouch 904B, and it tested positive for cocaine.  Each brick, including packaging, was placed individually on a scale.  The total gross weight of the four bricks was determined to be 5,075 grams (5.075 kilograms).

7. At approximately 11:20 a.m. I advised APONTE MELENDE that she was under arrest and CBPO Evans provided APONTE MELENDE with her Miranda warnings in Spanish.  APONTE MELENDE stated that she understood the warnings, signed a waiver of her rights, and agreed to speak with me without counsel present. CBPO Evans translated the interview questions to APONTE MELENDE in Spanish.

8. APONTE MELENDE stated that she comes to the United States a lot to buy clothes for her business in the Dominican Republic.  APONTE MELENDE could not provide a name for her business in the Dominican Republic and then stated the clothes were just for friends and random people back home.

9. APONTE MELENDE stated that a friend presented her the option of transporting drugs to the United States because she could not afford to pay for a surgery for her leg.  She stated that she received $1,500 U.S. dollars (USD) and would receive

3

another $4,000 (USD) once the delivery was made here in the United States.

10. APONTE MELENDE stated that she knew drugs were in the wheelchair but did not know precisely where within the wheelchair the drugs were located. She stated that she was supposed to check into the Holiday Inn Express in Lawrence, Massachusetts, and wait for a call from the Dominican Republic for directions on how to deliver the drugs.

11. Based upon the information set forth above, I submit there is probable cause to conclude that on May 10, 2015, APONTE MELENDE knowingly imported controlled substance, to wit, cocaine, to the United States in violation of Title 21 United States Code, Sections 952 and 960.

Sworn to under the pains and penalties of perjury,

_____
Michael D. Balestra
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations


Sworn and subscribed before me this 11th day of May 2015.

_____
DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE